*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AGNEW, Minors.

UNPUBLISHED
November 19, 2024
2:32 PM

No. 370728
Saginaw Circuit Court
Family Division
LC No. 22-050573-NA

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(*i*). Because the trial court did not err by terminating respondent's parental rights, we affirm.

## I. BASIC FACTS

In July 2022, petitioner, the Department of Health and Human Services, filed a petition seeking to remove respondent's children from her care and asking the court to take jurisdiction over them.[1] Following a preliminary hearing, the court authorized the removal of the children. Thereafter, respondent entered a plea of admission to the allegations in an amended petition, including that she lacked appropriate parenting skills to parent the children and ensure that they received proper medical care. In particular, she admitted that she would use ropes to keep the door to the children's room shut and that, while locked in the bedroom together, one child would smear feces on one of the other children. Respondent further admitted that she needed a psychological evaluation to determine what services would be appropriate to address her mental-health issues.

---

[1] Petitioner also filed a petition against the children's father, seeking termination of his parental rights to the children. The children's father voluntarily terminated his parental rights, and he is not a party to this appeal.

-1-

Based upon her plea of admission, the court found that jurisdiction over the children was proper under MCL 712A.2(b)(1) and (2).

In August 2022, a case service plan was developed that required respondent to, among other things, attend individual counseling and the "Wellspring" supportive visitation and parenting class program, to participate in supervised parenting time, to submit to a psychological evaluation, and to follow any recommendations from her oldest child's therapist. Respondent, who had been charged with assault with intent to murder, was also required to keep her caseworker apprised of that case.[2] At that time, housing, income, and transportation were not barriers to reunification. However, at the time of the termination hearing, respondent was living with a "friend with benefits" and she was reliant upon him to assist her with paying rent and household expenses.

In September 2022, respondent completed her psychological evaluation. It was determined that she was "within the mild cognitive impairment range," and she was diagnosed with borderline intellectual functioning, persistent depressive disorder, post-traumatic stress disorder, general anxiety disorder, and borderline personality disorder. The evaluator concluded that it was "not probable that [respondent] will be able to learn to effectively manage [her mental health] at a consistently healthy and stable enough level to insure functional and healthy parenting within the next year or two." The evaluation recommended "at least a year of intensive work on [respondent's] part to stabilize from her mental health challenges as well as to allow for her intellectual impairment . . . before reunification can be considered." It was also recommended that she receive anger-management classes and Dialectical Behavior Therapy (DBT) skills training. Consistent with the evaluation, respondent's treatment plan included weekly therapy appointments, weekly case management appointments, and monthly medication reviews.

Respondent made progress toward reunification between September 2022 and February 2023. She completed therapy once a week, participated in case management once a week, and had monthly medication reviews. She also attended most of the parenting time that was offered and had a bond with the children. Yet, respondent did not start DBT skills training or anger-management classes. And she failed to attend medical appointments for her youngest child, who required frequent appointments due to being diagnosed with hypothyroid disorder. Then, in February 2023, respondent moved from Saginaw to Detroit so that she could live with her boyfriend. At that time, she stopped participating in services through Saginaw Community Mental Health. Eventually, those services were transferred to the Detroit area. She was also provided with services through the Neighborhood Service Organization (NSO). Respondent was inconsistent with the NSO appointments, however. Further, by December 2023, respondent was refusing psychiatric services and had discontinued with the psychotropic medications that she had been prescribed. Respondent also started to no-show for counseling appointments.

---

[2] While the child protective case was ongoing, respondent was acquitted of the charge of assault with intent to murder.

While the case was active, respondent completed the Wellspring program. At the end of the program, it was determined that she had improved in some parenting areas, but that her risk of engaging in abusive parenting practices had changed from "moderate" to "high risk." Nevertheless, respondent's parenting time was expanded. To accommodate respondent, it was determined that her boyfriend (who was providing her with transportation at that time) could attend half of the visits.[3] Further, respondent was directed to plan a visit at a community location and bring all required supplies for the children. The goal of the expanded visitation was to allow respondent to test her parenting skills in a more realistic and difficult environment. Respondent, however, only planned community visits for approximately one month. Thereafter, her caseworker had to plan the visits.

At parenting times, respondent demonstrated concerning behavior, including yelling at the children, failing to check one of the younger children's diapers even after being advised by the supervisor that she should do so, and using inappropriate language in front of the children. Moreover, she would leave her children unattended during the community visits. On one occasion, one of the children ran off and a caseworker had to run to catch up with him. On another occasion, she left one of the younger children on the floor in front of a door and a caseworker had to pick him up so he would not get stepped on. Respondent's caseworker noted that "keeping up" with the children in busy places was a challenge for respondent.

In December 2023, petitioner filed a supplemental petition seeking termination of respondent's parental rights. Following the termination hearing, the trial court found that termination was warranted under MCL 712A.19b(3)(c)(*i*) and that termination of respondent's parental rights was in the best interests of the children. This appeal follows.

## II. REUNIFICATION EFFORTS

### A. STANDARD OF REVIEW

Respondent argues that petitioner failed to make reasonable efforts to reunify her with her children because the services offered did not accommodate her intellectual disability. Generally, this Court reviews for clear error a trial court's finding regarding reasonable reunification efforts. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Unless certain aggravating circumstances apply, a trial court must order reasonable efforts to reunify the child and family. MCL 712A.19a(2). "[T]ermination is improper without a finding of reasonable efforts." *In re Hicks/Brown*, 500 Mich 79, 90; 893 NW2d 637 (2017). In order to

---

[3] Respondent later broke up with her boyfriend, which left her homeless for a time while she was in Detroit. The two reconnected for a time and he was assisting her with maintaining a home after she moved back to Saginaw. They apparently broke up again and, during the termination hearing, respondent stated that they were now just "friends with benefits."

satisfy its duty to make reasonable reunification efforts, petitioner must "create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86; see also MCL 712A.18f(3)(d). "[E]fforts at reunification cannot be reasonable under the Probate Code if [petitioner] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability . . . ." *Id*. at 86. "While the [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Atchley*, 341 Mich App at 339 (quotation marks and citation omitted). When challenging the services offered, a respondent must show that he or she would have fared better if other services had been provided. *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021). That includes identifying what services should have been offered by petitioner to accommodate the respondent's specific needs. *Id*.

In this case, respondent submitted to a psychological evaluation, which identified her intellectual limitations and made recommendations as to the services she required in order to be reunified with her children. Respondent was provided with the recommended services. Initially, she complied with and even showed some benefit from the services by attending case management, individual counseling, and medication reviews. However, as the case progressed, her compliance became inconsistent. She moved from the area, which led to a delay in receiving mental-health services. Then, after services were set up in her new area, she missed appointments and stopped taking recommended psychotropic medications.

On appeal respondent argues that, to accommodate that disability, she should have been provided with assistance from "a consistent guardian ad litem"[4] who could assist her with reunification and help her coordinate mental-health services. She also asserts that she should have received inpatient mental-health services. However, given that the psychological evaluation identifying her intellectual disability did not recommend such services, petitioner did not fail to make *reasonable* reunification efforts by failing to offer the additional services identified by respondent. Rather, on this record, it is apparent that petitioner was aware of respondent's intellectual disability. And instead of guessing at which services were needed for reunification, petitioner offered respondent a psychological evaluation and then offered services consistent with the recommendations. As a result, we discern no error regarding petitioner's reasonable efforts toward reunification.[5]

---

[4] We are uncertain as to how a more "consistent" legal guardian ad litem could have benefited respondent. In a child protective proceeding, the duty of the legal guardian ad litem is to advocated for the best interests of the children. MCL 712A.17d(1)(b). It is, in turn, a caseworker's responsibility to assist a respondent with reunification, which would include help with coordinating mental-health services. The caseworker in this case, in fact, provided such services. Prior to moving to Detroit, respondent attended a weekly case management meeting. Further, the record reflects that her caseworker provided her with information regarding the recommended services.

[5] Respondent does not challenge the court's finding that termination was appropriate under MCL 712A.19b(c)(*i*).

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding termination of her parental rights to be in the best interests of her children. We review for clear error a trial court's finding that termination of a respondent's parental rights is in a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

### B. ANALYSIS

After a statutory ground for termination has been proven, the trial court must also find that termination is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The emphasis at this stage of the proceedings is on the child, not on the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Respondent points out that she completed the Wellspring supportive visitation parenting program. She recognizes that she improved in some areas, but got "worse" in others. Significantly, the area in which she got worse was a potential for abusive parenting, which changed from moderate to high risk. And, regardless of respondent's improvements as a result of the Wellspring program, respondent was unable to demonstrate a consistent benefit from the program during parenting time. She stopped planning community parenting-time visits and missed some visits completely. During the visits that she did attend, she had difficulty managing all three children, which resulted in caseworkers having to intervene to prevent the children from running off or getting stepped on. On appeal, respondent suggests that the presence of her oldest child was what overwhelmed her during the visits. She contends that he required more "active" parenting as a result of his medical concerns. Yet, respondent also continued to miss the necessary medical appointments for the youngest child, who had significant medical issues.

Respondent notes that she had a bond with her children. Yet, the oldest child was bonded with the aunt with whom he had been placed and the younger children were bonded with their foster family. The children were thriving in their placements. Both placements indicated a willingness to adopt, which would provide the children with needed permanence and stability. Despite the children being in care for over 500 days, respondent was still no closer to reunification. She had not rectified her mental-health issues. Instead, she moved from the area, stopped attending counseling, and declined recommended psychotropic medications. Given the record in this case, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett